[No. 29462. Department One. July 23, 1945.]

O. K. COCHRAN, *Appellant,* v. H. D. McDONALD, *Respondent.*[1]

[1]Reported in 161 P. (2d) 305.

*Cornelius C. Chavelle* (*Chavelle & Chavelle,* of counsel), for appellant.

*Kellogg, Walters & Pedersen* and *Eggerman, Rosling & Williams* (*Joseph J. Lanza,* of counsel), for respondent.

GRADY, J.—This action was originally brought by O. K. Cochran against Winterine Manufacturing Company, a corporation, to recover damages for breach of warranty. In an amended complaint H. D. McDonald, doing business as McDonald & Company, was joined as a defendant. The plaintiff was unable to secure legal service of process upon Winterine Manufacturing Company, and the case proceeded to trial against McDonald & Company as the sole defendant. At the close of the evidence submitted by the plaintiff, its sufficiency was challenged by the defendant, which challenge was sustained by the court and a judgment was entered dismissing the action. The motion of the plaintiff for a new trial was denied, and this appeal followed.

The factual situation as disclosed by the record is as follows: Winterine Manufacturing Company manufactured a product known as Antarctic Antifreeze to be used in motor vehicles to prevent freezing in cold weather. The company assigned to respondent the western part of Washington for the distribution of its product, and he purchased from it a large quantity of the antifreeze. The antifreeze was put up in sealed gallon jugs, and to each jug the manufacturer affixed a label upon which was printed the following:

"Antarctic Antifreeze. The Manufacturer's Guarantee on Antarctic Antifreeze is Insured by an Old Line Casualty Company. Manufactured by Winterine Manufacturing Company, Denver, Colorado.

"Guarantee. The Manufacturer of this Antifreeze Guarantees: 1. If used according to directions, in a normal cooling system, Antarctic Antifreeze will protect the cooling

system from freezing for a full winter season. 2. It will not cause rust or deteriorate the hose, radiator or engine of your car. 3. It will not cause damage to the finish of your car. 4. It will not evaporate. 5. It will not leak out of a cooling system tight enough to hold water.

"Directions for Use. Do not mix with any other antifreeze. Drain cooling system, make certain it is clean and leakproof. Put in proper amount of Antarctic to afford the required freezing protection. (See your dealer's 'Protective Chart.') Add water. Fill to within about 2 inches of top of radiator."

The respondent sold a quantity of the antifreeze to Huletz Auto Electric Co., and it resold to a Texaco service station. The appellant purchased a gallon jug of the antifreeze from the service station. Before making the purchase, appellant read what was on the label. He testified that this induced him to buy the antifreeze and that he relied upon the representations printed thereon. Appellant put the antifreeze in the radiator of his automobile. Damage was done to the radiator and motor of appellant's automobile. An analysis of the antifreeze showed that it contained highly corrosive elements and was unfit for the purpose designed. The inherently dangerous character of the article was not known to respondent, and there was nothing about it as handled by him indicating anything out of the ordinary. It was only upon use of the antifreeze that its character became known.

The appellant presents three grounds of liability of respondent to him: (1) Upon the express warranty printed upon the label affixed to the article by the manufacturer; (2) upon an implied warranty of fitness for the purpose intended when the article resold is noxious and dangerous to property; (3) upon an implied warranty of fitness for the purpose intended under the uniform sales act.

We shall discuss the foregoing in the order set forth.

(1) The question presented is whether a wholesaler who purchases goods from the manufacturer of them who has affixed a written warranty of quality or fitness for the purpose intended, by reselling the goods to a vendee, is liable upon the warranty to an ultimate purchaser who relies upon the warranty in making his purchase, puts the goods to use,

and suffers damage to his property by reason of a breach of the warranty.

In our discussion of this branch of the case, we shall refer only to express warranties, as the subject of implied warranty is treated later in this opinion.

We have not found in our research many cases dealing with the precise question we are now considering, but the courts passing upon the question, and the text writers, seem to agree that the applicable principle of law is that a dealer is not liable upon an express warranty of a manufacturer which is put out with or attached to the goods manufactured unless he, in some way, adopts the warranty and makes it his own when selling the goods to others; and that by merely selling the goods he does not adopt the warranty of the manufacturer as his own. *Pemberton v. Dean,* 88 Minn. 60, 92 N. W. 478, 60 L. R. A. 311, 97 Am. St. 503; *Cool v. Fighter,* 239 Mich. 42, 214 N. W. 162; *Wallace v. McCampbell,* 178 Tenn. 224, 156 S. W. (2d) 442; 55 C. J. 684, Sales, § 687.

In 55 C. J., *supra,* the author states:

"A purchaser of personal property with warranty, who in reselling it to another adopts, by his conduct at the resale, the warranty of his seller, thereby assumes a warranty of the same character as that which was expressly accorded to him. The fact of resale does not of itself constitute an adoption of prior warranties so as to render the seller liable for failure of the goods to comply with such warranties; and this is true even though the words of warranty are physically affixed to the goods."

The *Pemberton* case, *supra,* although not citing any supporting authority, is a leading case on the subject and is the basis for the text pronouncing the foregoing rule in 24 R. C. L. 158, Sales, § 430, and 46 Am. Jur. 495, Sales, § 313.

In determining the question of liability upon the express warranty of the manufacturer not adopted by a subsequent seller, the same rule must necessarily apply whether the warranty be of title, quality, or fitness for purpose. The question of privity of contract has nothing to do with the case, nor does the exception to the rule in cases of food or

articles inherently dangerous have any bearing on this particular subject. The sole question is whether a seller is liable upon the express warranty of the manufacturer.

In *Peregrine v. West Seattle State Bank,* 120 Wash. 653, 208 Pac. 35, we had before us a case where the bank sold an automobile to one Freedman and gave him a bill of sale to it containing an express warranty of title. The warranty ran to the vendee, "his heirs, executors and assigns." Freedman sold the automobile to Peregrine with the same kind of an express warranty of title as given by the bank. The title failed, and Peregrine brought an action for damages for breach of warranty against the bank and Freedman. In order to save a multiplicity of actions, Freedman tendered his defense to the bank, and it accepted it on his behalf and for itself. We held in that case that the express warranty of the bank was available only between the parties to the contract and not in favor of third parties, and that Freedman only was liable to Peregrine, and that the bank was liable only to Freedman.

We think, under the foregoing authorities, that the correct rule of law is that a vendor of goods is not liable upon the express warranty of the manufacturer unless in making a sale he adopts the warranty as his own, or such warranty is specifically assigned to his vendee.

The respondent in this case did not sell the antifreeze to appellant and, having had no transaction with him, did not either adopt the warranty as to him or assign the warranty to him. It must follow, therefore, that the respondent is not liable to appellant upon the express warranty of the manufacturer.

(2) On this branch of the case, appellant contends that the rules pronounced by us in *Mazetti v. Armour & Co.,* 75 Wash. 622, 135 Pac. 633, 48 L. R. A. (N. S.) 213, Ann. Cas. 1915C, 140; *Flessher v. Carstens Packing Co.,* 93 Wash. 48, 160 Pac. 14; *Baxter v. Ford Motor Co.,* 168 Wash. 456, 12 P. (2d) 409, 15 P. (2d) 1118, 88 A. L. R. 521; *Nelson v. West Coast Dairy Co.,* 5 Wn. (2d) 284, 105 P. (2d) 76, 130 A. L. R. 606; *Geisness v. Scow Bay Packing Co.,* 16 Wn. (2d) 1, 132 P. (2d) 740; *Bock v. Truck & Tractor, Inc.,* 18 Wn. (2d)

458, 139 P. (2d) 706, apply to the facts of the case at bar on the theory that the article sold by respondent was of a noxious and dangerous kind and inherently and imminently dangerous when used for the purpose for which it was sold and purchased, and, therefore, respondent is liable to appellant for the damage done to his automobile because the article was impliedly warranted by him to be fit for the purpose intended and because it was of a noxious and dangerous kind.

It will be observed from the foregoing cases that in four of them the article sold was food intended for and used for human consumption. When all of those cases are read and considered together, it will be seen that liability was founded upon the theory that both the manufacturer and the subsequent vendors either impliedly warranted the wholesomeness of the food, or had wrongfully put out on the market to the consuming public a commodity for human consumption that was dangerous to health and were, therefore, responsible for the natural consequences of their wrongful acts regardless of any knowledge or intent on their part or privity between the parties. In the other two cases, the manufacturer, and one occupying a similar position, who put on the market a vehicle defective and dangerous when used were held liable to parties who sustained personal injuries irrespective of any privity between them.

In our consideration of the cases relied upon by the appellant and in determining whether they apply to the facts of the case before us, we must have in mind that the party sought to be held liable was a wholesaler who purchased antifreeze from the manufacturer in sealed containers covered by an express warranty of the manufacturer, and who resold to a dealer; that the antifreeze sold was not for human consumption, and the complaining party was one who purchased from still another dealer, and the injury suffered was to his property and not to his person. In view of the situation thus presented, it will at once be apparent that some of the cases referred to by appellant do not apply to the case before us because of the difference in the relationship between the parties involved, and required the applica-

tion of principles of law peculiar to those relationships; and with this thought in mind we must exclude from our consideration the cases involving the liability of the manufacturer and the immediate vendor of the article sold and which caused the injury, except in so far as the general principles applied in them also apply to the relationship of the parties to this case.

It seems to us in the final analysis of the situation the only basis upon which recovery on the part of the appellant against respondent could be sustained is upon the application of the doctrine of the food cases cited. This field has been so fully covered by our own cases that we find it unnecessary to cite or review those from other jurisdictions. The other cases are in conflict, and neither the courts nor the text writers have been able to reconcile them. When our food cases are critically examined, it will be found that the rules pronounced in them are exceptions to the general rules of the law of sales. The position taken was justified on the ground that, when such an article as food for human consumption is considered, a question of health is involved, and public policy and the ends of social justice demand a rule be applied that will aid in the protection of health.

Whatever may be said in support of the application of what is recognized as an exception to the general rule of liability in the law of sales, we are of the opinion that it cannot be held to apply to this case so as to create a liability upon the part of respondent. There is no question of public policy involved in this case, nor can it be said that it is necessary in order to promote social justice to apply the doctrine of the food cases to the facts of this case. There is no question of public health involved because of consuming an unwholesome or poisonous article of food. The element of hardship because the immediate vendor may not be solvent or the manufacturer may be beyond the jurisdiction of the court, cannot enter into a case of this kind.

The respondent purchased the antifreeze from the manufacturer, and each gallon quantity was in a sealed container. It was covered by an express warranty of the manufacturer. There was nothing about the article to indicate that it would

be dangerous when used for the purpose intended, and respondent had no reason to anticipate it was not as represented by the warranty. The respondent was not called upon to analyze or test the antifreeze before selling it to the dealers in that class of goods. There was nothing which even remotely put him on inquiry as to its quality or condition.

We feel that, as no question of public policy is involved, and the reasons for the exception to the general rule of implied warranty in the law of sales applied in the food cases are absent, we would not be warranted in extending the rule of the cases cited to this case and in holding that a wholesaler is liable to a purchaser of the goods from a retailer upon either the theory of an implied warranty of quality or fitness for the purpose intended, or upon the theory that the wholesaler had sold an article that ultimately .proved dangerous to property when used for the purpose for which it was manufactured.

█ (3) The applicable provision of the uniform sales act to the issues presented in this case is Rem. Rev. Stat., § 5836-15 [P.P.C. § 860-9].

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

Under this provision of the statute there are two essential elements, both of which must exist before a buyer can recover from a seller for a breach of an implied warranty: (1) the buyer either expressly or by implication must make known to the seller the particular purpose for which the article he is buying is required by him, and (2) the buyer must make it appear that, when he purchased the article, he relied upon the seller's skill or judgment. The. wording

of the statute seems clearly to indicate that the transaction or sale must be one between the immediate parties thereto.

Even if it may be said that, in order to comply with the first element referred to, the buyer himself does not have to make known to anyone the purpose for which he is buying the goods, but it is sufficient if from the very nature of the goods themselves the purpose must be known to all sellers of them, nevertheless the second element cannot be implied as between a wholesaler and a remote vendee. There can be no legitimate claim in this case that the appellant relied on the skill and judgment of respondent. The parties were complete strangers to each other, and there was nothing about the purchase by appellant to indicate he even knew the antifreeze he purchased had passed through the hands of the respondent as a wholesaler. If he relied on anything or on anyone, it was the express warranty of the manufacturer or his immediate vendor. There can be no recovery under the statute. This conclusion makes it unnecessary for us to consider the effect of the subdivision of the statute providing that, if a sale is made of a specified article under its patent or trade name, there is no implied warranty as to its fitness for any particular purpose.

We have examined all of the authorities cited by respective counsel as well as many others, but do not feel that an analysis and discussion of them would serve any useful purpose. None of those cited by appellant go so far as to hold that a wholesaler, who has no knowledge that the manufactured goods he sells and distributes in sealed containers are dangerous, is liable to a purchaser from a dealer who sustains injury to his property as a result of the use of the goods purchased, when such goods are not food or other goods sold and used for human consumption, upon either the theory of implied warranty or because he handled and sold as a wholesaler goods which later were found to be dangerous to property.

The appellant has made a very ingenious argument as to why the doctrine of the food cases and the rule as to the liability of a manufacturer of dangerous articles should apply as between a wholesaler or distributor and an ultimate user

who purchased from a dealer, but it is pointed out in the cases pronouncing the rules relied upon by the appellant that such rules are exceptions to the well- and long-established rules relating to the law of sales of personal property affecting the liability of those who manufacture goods for sale and use and those who handle them in the channels of trade and commerce for breach of implied warranty or legal duty.

The judgment is affirmed.

BEALS, C. J., SIMPSON, and JEFFERS, JJ., concur.

STEINERT, J., concurs in the result.