[No. 35912. Department Two. April 12, 1962.]

HATTEN MACHINERY COMPANY, *Appellant,* v. JOHN N. BRUCH *et al, Respondents.**

*Little, Palmer, Scott & Slemmons* and *Warren R. Slemmons,* for appellant.

*Dana E. Harper,* for respondents.

* Reported in 370 P. (2d) 600.

FINLEY, C. J.—Appellant Hatten Machinery Company commenced this action against John N. Bruch and his wife to recover alleged unpaid rental and incidental charges (parts and services) due on a lease of certain earth-moving equipment. Respondent Bruch counter-claimed, alleging that the equipment was not as warranted and, therefore, caused Bruch to suffer damages measured by advance rental paid, transportation expense, extra labor expense and repairs.

The Hatten Machinery Company is engaged in the business of selling and renting construction equipment, and maintains offices in Seattle. The president of the company, Jack T. Hatten, has been active in this type of business for over nineteen years and, since 1954, has operated his own corporate business enterprise. Respondent Bruch is engaged in the heavy construction business in the Port Angeles area and frequently contracts to do road building and similar work.

Bruch, while engaging in activities pursuant to a contract to construct a road for a logging company, contacted the appellant corporation by telephone and talked to Jack T. Hatten. The exact conversation is in dispute, but the trial court found, and Bruch's testimony is to the effect, that Bruch informed Hatten of a need for two ten-yard, rubber-tired earth removers, or scrapers, for the purpose of loading and transporting gravel over a hard road from its source to the contemplated logging road. According to Bruch, he then asked if equipment suitable for this purpose was available for rent, and Hatten stated that he had two scrapers which were almost new; that they were of a particular brand (Woolridge Model T-70 dirt-moving scrapers, commonly known as "Cobrettes"), and would do the job. Negotiations as to rental price ensued, and a rental rate agreeable to both was fixed. Bruch rented the machines at the agreed rate and made arrangements to have an employee pick them up.

Hatten's version of the telephone conversation is to the effect that Bruch expressed a desire to rent two dirt scrap-

ers, but did not indicate the type of job or the conditions involved. Hatten testified that he had no knowledge that the machines were to be used to transport gravel, and that he made no statement indicating that the machines could be used for this purpose.

The machines were picked up by Bruch's employee and transported to the job site. In accordance with the agreement reached over the telephone, the employee delivered Bruch's check for eight hundred dollars when he assumed possession of the first machine. A few days later, a check for four hundred dollars was delivered, and the employee assumed possession of the second machine.

At the time of delivery of each machine, the employee signed a document which was the standard rental agreement used by the Hatten Machinery Company. These documents contained provisions negating any express or implied warranties, and provided that the lessor would "not be responsible for any breach of warranty, repairs, damages, loss of time, labor, materials, or profits arising out of any defect in the equipment or installation." There is no evidence to the effect that the employee was authorized to sign any agreement.

The evidence clearly shows that the two scrapers proved inadequate for the work; furthermore, that they continually broke down—one of them on thirty-three different occasions, the other at least thirty-two different times—although they were operated by men experienced in handling such equipment. The trial court found that each breakdown subjected Bruch to extra expense, including the cost of obtaining and replacing parts, wages to crewmen who were not needed until the machines were again operating, as well as overtime for mechanics to make repairs. The record shows that Bruch notified Hatten Machinery Company of the difficulties at least thirty times by telephone; that Hatten Machinery Company made an effort to repair the machines; that a service man was dispatched to work on the machines, and the sum of $1,290.77 was expended for parts and services.

The trial court found that equipment of similar type was not readily available in the area in which Bruch was working. Although the machines rented from Hatten did not perform properly for Bruch, he was pressured by time limitations of his road construction contract and retained them for approximately three months while efforts were made to make them function properly. A similar machine of another brand, owned by Bruch, performed the required work without difficulty.

There was evidence to the effect, and the trial court found, that the breakdowns were the result of inherent defects in the machines or the manner in which they were constructed. The trial court held that Hatten Machinery Company, through its president, knew this, or was duty bound to know it; and that Bruch was entitled to and did rely upon Hatten's experience and judgment and warranties of fitness for the purpose when he rented the machines. Because of the breach of warranty—*i.e.,* that the Hatten Machinery Company failed to provide the type of equipment which it agreed to provide, or which was capable of performing as Hatten had warranted it would perform—the trial court concluded that there was a complete lack of consideration for any claims for rental or incidental charges against Bruch, and dismissed Hatten Machinery Company's claims. Judgment was awarded Bruch on the counterclaim for twelve hundred dollars advance rental and two hundred dollars for transportation expense. No damages were allowed for added expenses caused by the breakdowns. The trial court found that the added expenses more than offset any credit to which Hatten Machinery Company might have been entitled by reason of Bruch's use of the machines for three months, but to fix the amount would be speculative.

Appellant bases its quest for reversal on three contentions: (1) the testimony relating to the telephone conversation does not establish the giving of any warranty with respect to the machines; (2) the oral negotiations were merged into two written contracts signed by Bruch's employee, and the disclaimer provisions therein contained

effectively negated any warranties; and (3) Bruch produced no competent evidence of damages and failed to mitigate damages by keeping the machines after knowledge that they were not suitable for his purposes.

While we could perhaps dismiss this appeal summarily as a factual matter on the basis of *Thorndike v. Hesperian Orchards, Inc.* (1959), 54 Wn. (2d) 570, 343 P. (2d) 183, the case is unusual enough to merit some discussion. Although the doctrine of warranty of fitness for a particular purpose is generally thought of in relation to contracts for the sale of goods and the applicable provisions of the Uniform Sales Act, it is by no means exclusive to that area of the law. Analogous rules, the roots of which are imbedded in the common law, exist in relation to contracts of lease or hire of chattels. *Hoisting Engine Sales Co. v. Hart* (1923), 237 N. Y. 30, 142 N. E. 342, 31 A. L. R. 536; *Thompson Lbr. Co. v. Cozier Container Corp.* (1958), 80 Idaho 455, 333 P. (2d) 1004. See cases cited in Annot. 68 A. L. R. (2d) 850 (1958).

The trial court's findings of fact are supported by substantial credible evidence in the record. We must, therefore, accept them. The trial court found that Hatten Machinery Company, through its president, with knowledge of the capabilities of its machines and knowledge of the purpose for which the machines were to be used, made representations that the machines would do the job. Bruch relied on Hatten's representations, experience, and judgment. On the basis of these facts it can be found that an express warranty was given that the machines would be appropriate for and would satisfactorily meet the lessee's requirements. See *Holland Furnace Co. v. Korth* (1953), 43 Wn. (2d) 618, 262 P. (2d) 772, 41 A. L. R. (2d) 1166. Even if it could not be said that Hatten's statement amounted to an express warranty, the warranty would arise by implication. *Hoisting Engine Sales Co. v. Hart, supra.*

The effect of the provisions negating any warranties, contained in the purported rental agreements, depends upon the extent of authority of Bruch's employee. Appellant

contends that the employee acted as agent, and, therefore, Bruch is bound by the document signed by him. The burden of establishing the authority of an agent rests upon the one who asserts it. *Olsson v. Hansen* (1957), 50 Wn. (2d) 199, 310 P. (2d) 251. There was no evidence tending to establish that the employee had the authority to enter into, or negotiate changes in, contracts for Bruch. Appellant has, therefore, failed to meet his burden of proof. The trial court regarded the written documents as superfluous. Judgment was rendered on the theory that the contractual relations between the parties originated with and were determined by the oral agreement reached over the telephone. We accept that judgment.

The damages assessed by the trial court included only advance rental payments and transportation expense. There was no dispute as to the amounts expended. Appellant's contention that no evidence of damages was produced is without merit.

The trial court held that Bruch's retention of the machines for a period of three months was not unreasonable under the circumstances. We agree with that conclusion. See *Lester v. Percy* (1961), 58 Wn. (2d) 501, 364 P. (2d) 423, and cases cited therein for a discussion of this problem in the context of a sales transaction.

The trial court should be and is hereby affirmed.

HILL, DONWORTH, OTT, and HUNTER, JJ., concur.