[No. 39121.    Department Two.    October 17, 1968.]

Northwest Collectors, Inc., *Appellant*, v. Howard Gerritsen, *Respondent*.*

*Ennis & Klobucher* and *William G. Ennis,* for appellant.

*Douglas A. Wilson,* for respondent.

Hamilton, J.—This action was instituted by the assignee of a lessor of personal property to recover rental payments due upon an alleged breach by the lessee of a written lease agreement. The primary matter involved on appeal is the lessee's affirmative defense and cross complaint which related to his attempted cancellation of the lease on grounds that the rental property was not fit for the purpose intended, and that it was not repaired as warranted.

The lessee, Howard Gerritsen, is a grocer who operates three markets in the Yakima area. In 1963, he became

*Reported in 446 P.2d 197.

interested in procuring three ice vending machines, as advertised in the literature of Carl Rhodes Sales Co., Inc. (hereafter referred to as Rhodes), a California corporation. He was contacted by Jack Ziegler, an employee of a local sales agent (Lee Slusher & Associates) representing Rhodes. Ziegler proposed that Gerritsen purchase three used ice vending machines which would be reconditioned and delivered with a full new machine warranty. However, as Gerritsen was reluctant to purchase, outright, machines with which he was unfamiliar and which might not be satisfactory in the Yakima climate, Ziegler alternatively proposed that the transaction be "financed" through an intermediate company.

Gerritsen agreed to the proposal and Ziegler presented for his signature two financing agreements, one of which was a property lease arrangement with Guthrie Investments, Inc. (hereafter referred to as Guthrie), which provided that Guthrie would purchase the machines and lease them to Gerritsen for a 60-month period at a stipulated monthly rental. Despite the language "LEASE OF PERSONAL PROPERTY" printed in large block letters on the face of the agreement, Gerritsen asserts he signed the document without reading it or realizing its import. Because the machines were used and because he was not sure of their suitability for the area climate, Gerritsen insisted that Ziegler write as an "additional provision" on the face of the agreement the words "Sellor [sic] Agrees To Deliver These Machines With Full New Machine Warranty." With this language on the face of the agreement and with Rhodes designated as the "Supplier of Equipment," the document was forwarded to Guthrie where it was accepted and signed by the vice-president of that firm on August 21, 1963.

Soon after delivery of the machines, mechanical difficulties arose requiring repair. For a period of 15 months Rhodes paid for the services of a local repairman, but thereafter refused to assume any further obligation. The machines continued to malfunction and to be unfit for the purpose intended.

Gerritsen kept his lease account current for 20 months, but finally, becoming frustrated by the unsatisfactory operation of the machines and the failure by Rhodes to respond to his complaints, he sought the advice of an attorney. It was then, he states, that he first learned he had signed a lease agreement rather than an installment sales contract, and that he was in fact the lessee of Guthrie's interest in the machines rather than the purchaser.

On May 15, 1965, Gerritsen communicated with Guthrie for the first time during the course of the transaction to advise it that he considered the lease as canceled. He wrote, "These machines have been very unsatisfactory and have not been as represented at the time the lease agreement was made."

Guthrie, however, insisted on enforcing the lease agreement and assigned the account to appellant, Northwest Collectors, Inc. Appellant then instituted this action against Gerritsen, and thereafter took possession of the machines pursuant to stipulation, the terms of which are not before us.

Gerritsen joined Rhodes and Guthrie as third-party defendants, and filed an affirmative defense and cross complaint based upon the unsatisfactory condition of the rental property and the failure to make repairs. The trial court found and concluded that the arrangement was in fact a leasing agreement and that since Gerritsen and Guthrie were the only two parties to the agreement the "Full New Machine Warranty" written on the face of the lease must be construed as binding on Guthrie, despite an express disclaimer printed on the back of the form. It then held that this embraced and included a warranty of fitness which was breached, and that Gerritsen was entitled to cancel the lease agreement. Rhodes did not appear and an order of default was entered. Appellant as the assignee of Guthrie brings this appeal.

For the reasons hereafter set forth, we vacate the judgment and remand the cause for further proceedings.

■ Although the doctrine of warranty of fitness for a particular purpose is generally thought of in relation to contracts for the sale of goods, it is by no means exclusive to that area of the law. Analogous rules, the roots of which are imbedded in the common law, exist in relation to contracts of lease or the hire of chattels, and, depending upon the circumstances involved, implied warranty of suitability may arise and be imposed upon a lessor. *Hatten Mach. Co. v. Bruch,* 59 Wn.2d 757, 370 P.2d 600 (1962). *See Warranties in connection with leasing or hiring of chattels,* Annot., 68 A.L.R.2d 850 (1959).

Under the particular facts of the instant case, however, we find that there was no independent implied warranty of fitness, as such, running from Guthrie, the lessor, to Gerritsen, the lessee. Printed conspicuously on the back of the lease form was an express disclaimer, stating:

9. Lessor will request the supplier to authorize lessee to enforce in its own name all warranties, agreements or representations, if any, which may be made by the supplier to lessee or lessor, *but lessor itself makes no express or implied warranties as to any matter whatsoever, including, without limitation, the condition of equipment, its merchantability or its fitness for any particular purpose.* (Italics ours.)

As stated in *McDonald Credit Serv., Inc. v. Church,* 49 Wn.2d 400, 402, 301 P.2d 1082 (1956), this court has often held that when parties enter into a contract in which the seller (or lessor) expressly refuses to give any warranty, and the contract is not induced by fraud, no warranty of any kind will be implied by law. *See Lent v. McIntosh,* 29 Wn.2d 216, 186 P.2d 626 (1947); *Williamson v. Irwin,* 44 Wn.2d 373, 267 P.2d 702 (1954), and cases cited.

■ Moreover, the rationale for imposing as a matter of law an independent warranty of fitness is absent in the present case. Here, there was no reliance by the lessee, or reason for him to rely, on the lessor's familiarity with the leased property or the particular uses to which it was to be put. Gerritsen selected the exact type of ice vending machines he wanted, and chose Rhodes as the supplier. He

694

then, in effect, approached Guthrie with the request that it purchase these specific machines and lease them to him. Guthrie had no special knowledge concerning the machines or Gerritsen's intended use thereof, and had no opportunity to select or inspect them for their fitness. Guthrie's only interest in the transaction was as a lessor-financier, a role from which we are unable to imply, as a matter of law, a warranty of fitness running to the lessee. *Accord, Transamerica Leasing Corp. v. Van's Realty Co.*, 91 Idaho 510, 427 P.2d 284 (1967); *Lawson v. Rusconi*, 112 Cal. App. 366, 296 Pac. 628 (1931).

As this appeal is concerned solely with the attempted cancellation of a lease agreement between lessor Guthrie and lessee Gerritsen, the matter of implied warranties running from the supplier, Rhodes, to Gerritsen, is not before us and we do not pass upon that issue.

■ As we have indicated, the trial court construed the "additional provision" written on the face of the lease as an express warranty running from lessor Guthrie to lessee Gerritsen which in turn embraced a warranty of suitability. However, considering the complete lease agreement, including the express disclaimer, and the circumstances of execution, we have come to a different interpretation of this provision. By the clear, unambiguous language of the lease Guthrie was not itself warranting the rental property. Instead, by signing the agreement and thereby adopting the added provision, Guthrie was promising that when the seller, Rhodes, delivered the machines to Gerritsen, they would be accompanied by a "Full New Machine Warranty" running from Rhodes to Gerritsen. This promise was bargained for by Gerritsen, and became a material element of the lease agreement; it was given as partial consideration for Gerritsen's promise to make rental payments on the machines.

This interpretation is consistent with the disclaimer provision printed on the lease form, quoted *supra*, whereby Guthrie stated that it was making no express or implied warranties as to any matter whatsoever, but would request

the supplier to authorize the lessee to enforce in its own name any warranties which were made by the supplier to either the lessor or lessee. In the instant case, Guthrie was only taking upon itself the obligation to see that the supplier did make a particular warranty.

This interpretation is also consistent with what we conceive would be a rational and probable agreement for a lessor-financier to enter into. Whereas it is reasonable to believe that such a lessor would have an interest in promising to a lessee that rental property would be delivered with the seller's warranty, it does not reasonably follow that such a lessor would have any interest in putting its own warranty on rental property which it had never seen, or any interest in adopting the seller's warranty in the manner in which a dealer might adopt a manufacturer's warranty. *See Cochran v. McDonald,* 23 Wn.2d 348, 161 P.2d 305 (1945).

The question thus presented then is whether Gerritsen would be entitled to cancel his lease with Guthrie on the grounds that the terms had been breached when it appeared that the leased equipment was not fit for the purpose intended and/or that it was not going to be serviced and repaired by the supplier, Rhodes, beyond the first 15 months. To answer this question properly, the answers to three additional questions are necessary. They are: (1) What is a "Full New Machine Warranty" in connection with the type of equipment involved? (2) did Rhodes provide such a warranty with the equipment? and (3) did Rhodes breach an express warranty by failing to provide service beyond the first 15 months or an implied warranty by failing to deliver equipment suitable for the intended use?

If, after resolving the first question, it appears that the second question must be answered in the negative, then a material obligation of Guthrie's lease agreement has not been fulfilled and Gerritsen would be entitled to pursue his remedy of cancellation against Guthrie. If, however, the second question must be answered in the affirmative, then

696

Guthrie had performed its undertaking and Gerritsen's remedy, such as it may be, lies only against Rhodes.

With the exception of the trial court's finding that warranty of fitness had been breached, neither the evidence presented at the trial nor the other findings of the trial court provide definitive answers to the dispositive questions. The cause, therefore, must be remanded for the introduction of further evidence and disposition in accordance with the views expressed herein.

Costs on appeal will abide the results of the remand.

FINLEY, C. J., HUNTER and HALE, JJ., and WALTERSKIRCHEN, J. Pro Tem., concur.