[No. 14249-6-I. Division One. June 16, 1986.]

ALBERT HISKEY, *Appellant*, v. THE CITY OF SEATTLE, *Defendant*, LIGHTING ARTS, INC./SEATTLE STAGE LIGHTING & EQUIPMENT, INC., *Respondent*.

*Janet Lane Eaton* and *Schroeter, Goldmark & Bender, P.S.*, for appellant.

*Gary W. House* and *Kenneth L. LeMaster*, for respondent.

SWANSON, J.—Albert Hiskey appeals the Superior Court's summary judgment order dismissing Lighting Arts, Inc./ Seattle Stage Lighting & Equipment, Inc. (Seattle Stage) as a defendant in his personal injury action for damages. Hiskey claims that summary judgment was improper because a genuine material factual issue existed as to whether Seattle Stage owed him a duty of care which was breached. We affirm.

The following facts are uncontroverted. A Rod Stewart rock concert was scheduled at the Seattle Center Coliseum on October 2, 1977. Hiskey was hired as a stagehand by the show's promoters, Avalon Attractions and Concerts West. TFA Electrasound Company, a California corporation, had been hired to handle the rigging of the lighting, scenery and sound equipment for the show.

On October 1, 1977, a TFA rigger contacted Michael McDonald, Seattle Stage's owner, to request that Seattle Stage furnish about 1,200 feet of 3/8-inch rigging cable to supplement TFA's cable for the rigging of the show's sound and lighting equipment. Seattle Stage was in the business of supplying lighting and other electronic equipment for concerts and stage productions. Seattle Stage delivered all 1,170 feet of 3/8-inch cable that it had after McDonald had inspected the cable for kinks, frays or other defects. McDonald, who was not a rigger, did not participate in the rigging and did not witness the ensuing accident although he was in the Coliseum at the time.

TFA did the rigging of the sound and lighting equipment, which was to be suspended from the ceiling above the stage. A large aluminum truss to which the equipment was attached, all of which weighed about 10 tons, was being hoisted above the stage when one of the rigging cables broke at the point where it was wrapped around the steel I-beam in the Coliseum's ceiling. As the truss fell to the stage, part of the attached equipment struck and injured Hiskey's right leg. The summary judgment motion of Seattle Stage, one of the named defendants in Hiskey's action for damages, was granted on the basis that there was

no genuine issue of material fact. A summary judgment order was entered upon the trial court's finding pursuant to CR 54(b) that no just reason for delay in the entry of judgment existed, and Hiskey now appeals that order.

The issue on appeal is whether summary judgment was improper because a genuine factual issue existed as to whether Seattle Stage owed Hiskey a duty of reasonable care which was breached. We conclude that summary judgment was properly granted.

When reviewing a summary judgment order, the appellate court engages in the same inquiry as the trial court. Under CR 56(c) summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985). The court must consider the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, and the motion should be granted only if reasonable persons could reach but one conclusion from all the evidence. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Bozung v. Condominium Builders, Inc.*, 42 Wn. App. 442, 445, 711 P.2d 1090 (1985). Once the moving party has met its burden of presenting factual evidence showing that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to set forth specific facts showing that a genuine issue exists for trial. *Graves v. P.J. Taggares Co.*, 94 Wn.2d 298, 302, 616 P.2d 1223 (1980); *Sea Farms, Inc. v. Foster & Marshall Realty, Inc.*, 42 Wn. App. 308, 311, 711 P.2d 1049 (1985), *review denied*, 105 Wn.2d 1010 (1986).

The essential facts here are undisputed. Hiskey claims, however, that the allegations of expert Maurice L. Kambarn, that Seattle Stage failed to comply with safety standards of ordinary care, created a factual dispute regarding the breach of Seattle Stage's duty to him to defeat Seattle Stage's summary judgment motion. Kambarn's affidavit states that in his opinion, Seattle Stage failed to exercise reasonable care in several specified respects and such fail-

ure was causally related to the falling of the lighting truss that resulted in Hiskey's injury. In essence, Kambarn is giving his opinion that Seattle Stage was negligent in breaching a duty of care owed to Hiskey. *See Pedroza v. Bryant,* 101 Wn.2d 226, 228, 677 P.2d 166 (1984); *Beeson v. ARCO,* 88 Wn.2d 499, 509, 563 P.2d 822 (1977).

However, Hiskey needed to set forth specific facts, not conclusory allegations, to raise a genuine factual issue that would preclude summary judgment. CR 56(e); *Sea Farms, Inc. v. Foster & Marshall Realty, Inc., supra; Patterson v. Bellevue,* 37 Wn. App. 535, 538, 681 P.2d 266, *review denied,* 102 Wn.2d 1005 (1984). The threshold determination of whether Seattle Stage owed Hiskey a duty of care is a question of law. *Pedroza v. Bryant, supra; Bernethy v. Walt Failor's, Inc.,* 97 Wn.2d 929, 933, 653 P.2d 280 (1982); *see* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 42, at 274 (5th ed. 1984). Further, assuming that Kambarn is a qualified expert, while expert testimony is admissible even if it embraces an ultimate issue to be decided by the trier of fact if it will assist the trier of fact to understand the evidence or determine a fact in issue, ER 702 and 704, experts are not to state opinions of law or mixed fact and law, such as whether X was negligent, Comment, ER 704; 5A K. Tegland, Wash. Prac., *Evidence* § 309, at 84 (2d ed. 1982); *Orion Corp. v. State,* 103 Wn.2d 441, 461, 693 P.2d 1369 (1985). An affidavit is to be disregarded to the extent that it contains legal conclusions. *Orion Corp.,* at 461–62; *American Linen Supply Co. v. Nursing Home Bldg. Corp.,* 15 Wn. App. 757, 763, 551 P.2d 1038 (1976); *see* CR 56(e).

Where no genuine material factual issue exists, the question is whether the moving party is entitled to a judgment as a matter of law. *Hartley v. State, supra.* Hiskey argues that Seattle Stage is liable to him for negligence because it breached a duty that it owed to him as the supplier of a chattel for another's use, citing the Restatement (Second) of Torts § 389 (1965). However, section 389, which presents the duty of a supplier for another's use of a chattel that is

unlikely to be made reasonably safe for use, is inapplicable since the cable that Seattle Stage supplied was not such a chattel.[1]

Rather, Seattle Stage's duty, if any, was that of a lessor of a chattel for immediate use, which is set forth in Restatement (Second) of Torts § 408:

> One who leases a chattel as safe for immediate use is subject to liability to those whom he should expect to use the chattel, or to be endangered by its probable use, for physical harm caused by its use in a manner for which, and by a person for whose use, it is leased, if the lessor fails to exercise reasonable care to make it safe for such use or to disclose its actual condition to those who may be expected to use it.

*Brescia v. Great Road Realty Trust,* 117 N.H. 154, 373 A.2d 1310, 1313 (1977); *Ikeda v. Okada Trucking Co.,* 47 Hawaii 588, 393 P.2d 171, 177 (1964); *see* W. Keeton § 104, at 715–16.

Where a lessor is in the business of leasing chattels, in the absence of an understanding to the contrary, it may be assumed that both the lessor and lessee understand that the article is leased as fit for immediate use. Restatement (Second) of Torts § 408, comment *b,* at 368. Here even assuming that the cable was leased as fit for immediate use, however, no evidence was presented that Seattle Stage had repaired the cable that was supplied or that the cable had a defect such that a duty to make reasonable repairs or to disclose a hidden defect arose. Thus, Seattle Stage's duty here, which it met, was to exercise reasonable care to inspect the cable for possible defects before turning it over to TFA for use in the show's rigging. *Brescia v. Great Road Realty Trust, supra; Scharf v. Gardner Cartage Co.,* 95 Ohio App. 153, 113 N.E.2d 717, 724–26 (1953); Restatement (Second) of Torts § 408, comments *a, c,* at 367–68; W.

---

[1]Three–eighths–inch cable, which was requested here, is not inherently dangerous. It was not the cable size per se but rather the use to which the cable was put that caused the break. According to Kambarn's deposition, another contributory cause of the cable breakage was improper rigging in that the steel cable was wrapped around a steel I–beam in the Coliseum ceiling with no anti–chafing gear.

Keeton, *supra* at 716. The uncontroverted evidence is that McDonald, Seattle Stage's owner, inspected the cable for kinks and frays and informed the TFA rigger to whom he delivered the cable of a loose thimble (loop secured with a fastener to protect the cable end) which, he was told by the rigger, did not affect the cable's use in rigging.

█ Hiskey's argument that Seattle Stage breached a duty to warn TFA that 3/8–inch cable was inadequate to rig a suspended 10–ton truss is unfounded. Hiskey would ascribe to Seattle Stage an implied warranty of fitness for a particular purpose, which may arise by analogy in a situation involving a contract of lease or the hire of chattels where a lessor has reason to know of such a particular purpose and the lessee relies on the lessor's skill or judgment to select or furnish suitable goods. *Northwest Collectors, Inc. v. Gerritsen,* 74 Wn.2d 690, 693–94, 446 P.2d 197 (1968); *Hatten Mach. Co. v. Bruch,* 59 Wn.2d 757, 761, 370 P.2d 600 (1962); *see* Annot., *Application of Warranty Provisions of Uniform Commercial Code to Bailments,* 48 A.L.R.3d 668 (1973).

However, the particular facts of the instant case give rise to no such an implied warranty of fitness. *Northwest Collectors, Inc. v. Gerritsen, supra* at 693. There is no evidence that McDonald had reason to know that TFA would be hoisting a 10–ton truss with the cable or that TFA was relying on his skill or judgment to provide cable fit for such a particular purpose. To the contrary, the undisputed evidence is that TFA specifically requested 1,200 feet of 3/8–inch cable to supplement its rigging cable and did not seek McDonald's recommendation as to the appropriate sized cable for lifting a 10–ton truss. No warranty of fitness for a particular purpose arises when the buyer or lessor orders goods according to his own specifications. *Lewis & Sims, Inc. v. Key Indus., Inc.,* 16 Wn. App. 619, 623–24, 557 P.2d 1318 (1976).

Finally, while McDonald was present at the Seattle Center Coliseum at the time of the accident, he was there as a City employee and not as a rigger, and there is no evidence

that McDonald participated in the actual rigging in any way such that a duty to warn arose at that time. No material factual issue was raised as to whether McDonald breached a duty of care owned to Hiskey; further, Seattle Stage was entitled to a judgment as a matter of law. *Hartley v. State, supra.* The judgment below is affirmed.

GROSSE and WEBSTER, JJ., concur.

Review denied by Supreme Court October 7, 1986.