[No. 27144-0-I.   Division One.   August 3, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. PHILLIP V. HILLMAN, *Appellant*.

*James S. Kempton,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Gerard Mac-Camy, Deputy,* for respondent.

KENNEDY, J. — Appellant Phillip Hillman appeals from the exceptional sentence imposed following his guilty plea to one count of first degree murder. We reverse and remand for resentencing.

I

On July 20, 1990, Hillman pleaded guilty to one count of first degree murder. Hillman stated that on May 2, 1990, he and his wife were driving on a logging road near Darrington. The truck became stuck. Hillman grabbed his shotgun and walked to the main road to get help. The victim,

Richard Duncan, happened to be driving by. He offered to drive into town to get a tow truck. Five to fifteen minutes later, Duncan returned and offered to help Hillman pull his truck out. Duncan and Hillman's wife walked up the logging road to look at the truck while Hillman remained by the main road. When Duncan and Hillman's wife returned, Hillman was hiding in the brush off the side of the road. As Duncan passed by, Hillman shot and killed him and buried his body in a shallow grave.

At the sentencing hearing on September 27, 1990, both the State and defense recommended a sentence at the high end of the standard range which was 388 months. Hillman submitted a psychiatric report prepared by Dr. Donald Bonnington. In the report, Dr. Bonnington diagnosed Hillman as suffering from posttraumatic stress disorder stemming from his combat experiences in Vietnam. Dr. Bonnington concluded that it is questionable whether Hillman is amenable to treatment.[1]

Despite the recommendation of the State and the defense, the court imposed an exceptional sentence of 840 months (70 years). The court set forth the following reasons to justify the imposition of an exceptional sentence:

(1) Defendant poses a clear and unequivocal danger to society, in that it is obvious in all probability that he would commit another violent offense. The release of defendant at any time would be tantamount to sentencing another innocent person to death.[2]

(2) The court would further find a "Good Samaritan" exception wherein one such as defendant lures a good Samaritan, such as the victim in this case, and then violently kills the victim, should be reason for an exceptional sentence because of the vulnerability of the victim.

(3) Supplementary findings and conclusions elaborating on the above may follow. Further, the court adopts its findings and conclusions made orally on the record.

---

[1]The trial court found that Hillman's rage remains unaltered despite his participation in an anger management program.

[2]In a letter to the court, Hillman stated that "I wouldn't want someone like me out on the street — liable to do it again."

On October 23, 1990, Hillman filed a notice of appeal with this court in which he appealed the exceptional sentence. On November 13, 1990, the trial court filed an addendum to its findings and conclusions.

On December 27, 1990, the court filed a supplemental addendum to the findings and conclusions of September 27, 1990, and to the addendum of November 13, 1990, in which the court further explained the finding of future dangerousness:

> The Court accepts the conclusion of Dr. Donald Bonnington that the defendant suffers from post traumatic stress disorder. This disorder creates a high probability that the defendant will, if released, commit further acts of violence. The Court accepts the conclusion of Dr. Bonnington that it is questionable whether the defendant is amenable to treatment. The defendant's rage remains unaltered despite the anger management program.

Hillman filed a motion on the merits with this court to strike the addendum and the supplemental addendum. On June 3, 1991, Commissioner Kessler referred the issue to a panel of this court.

## II
### A. Additional Findings

Hillman first asserts that this court, in reviewing the exceptional sentence, should only consider the trial court's oral ruling and the original written reasons submitted by the court upon the imposition of the exceptional sentence on September 27, 1990. Hillman argues that the trial court erred in submitting the additional findings of November 13, 1990, and December 27, 1990. Hillman thus requests that this court refuse to consider these findings in reviewing his exceptional sentence.

■ "It is the general rule in this state that findings and conclusions may be submitted and entered even while an appeal is pending." *State v. McGary*, 37 Wn. App. 856, 861, 683 P.2d 1125, *review denied*, 102 Wn.2d 1024 (1984). In *McGary*, the trial court failed to enter findings of fact and conclusions of law as required by JuCR 7.11(c). After the case had been appealed and after the parties had submitted

their briefs, the trial court entered the required findings which were accepted into the record on review.

On appeal, although the court stated that it disapproved of the procedures followed, the court found no error. *McGary*, 37 Wn. App. at 861. The court noted that the primary purpose of requiring findings is to allow the appellate court to fully review the questions raised on appeal. *McGary*, 37 Wn. App. at 861. The court concluded that:

> The practice of entering findings after the appellant has framed the issues in the opening brief has the appearance of unfairness and burdens the court with motions to supplement the record. In the instant case, however, McGary has not demonstrated any prejudice arising from the belated entry of findings. Thus, there was no error.

*McGary*, 37 Wn. App. at 861.

Here, the trial court submitted additional findings on November 13, 1990, and December 27, 1990. Hillman filed his brief on July 26, 1991. Hillman therefore was fully able to address the trial court's supplemental findings in his opening brief. Thus, the appearance of unfairness was not implicated in the instant case.

Moreover, Hillman was in no way prejudiced by the submission of the additional findings. Not only did Hillman have the opportunity to address the additional findings in his brief, but the additional findings merely elaborate upon the trial court's original findings of September 27, 1990. The additional findings add no new aggravating factors. While the practice of filing supplemental findings while an appeal is pending is not to be encouraged, here the trial court contemplated making supplemental findings of fact and so advised the State and Hillman at the time of sentencing, which is not in and of itself inappropriate. We will therefore consider the trial court's supplemental findings.

## B. Exceptional Sentence

A reviewing court will reverse a sentence outside of the standard range if: (a) the reasons supplied by the sentencing judge are not supported by the record which was before the judge or the reasons do not justify a sentence outside the standard range for that offense; or (b) the sen-

tence imposed was clearly excessive or clearly too lenient. RCW 9.94A.210(4); *see also State v. Grewe*, 117 Wn.2d 211, 214, 813 P.2d 1238 (1991); *State v. Batista*, 116 Wn.2d 777, 792, 808 P.2d 1141 (1991).

The determination of whether the record supports the sentencing judge's reasons is a factual determination and is reviewed under the "clearly erroneous" standard. *Grewe*, 117 Wn.2d at 218. An appellate court will reverse only if no substantial evidence supports the sentencing judge's conclusions. *Grewe*, 117 Wn.2d at 218. The determination of whether the reasons justify a sentence outside the standard range is reviewed under the "matter of law" standard. *Batista*, 116 Wn.2d at 792. Finally, the determination of whether the sentence was clearly excessive or clearly too lenient is reviewed under the "abuse of discretion" standard. *Batista*, 116 Wn.2d at 792.

Here, the trial court based the exceptional sentence on two reasons: (1) the victim's status as a "Good Samaritan" and (2) Hillman's future dangerousness.

1. Good Samaritan.

The trial court found that the victim's status as a "Good Samaritan" justified the imposition of an exceptional sentence; Duncan was attempting to aid Hillman when Hillman killed him. The court stated that a "Good Samaritan" exception should apply in cases where:

a person comes to the aid of another person, and then is senselessly killed or attacked by the person he/she is attempting to aid — this should be the basis for increasing the standard range. There is a special relationship that arises when one person comes to the aid of another. There is a *trust* established between the parties on the basis of one person helping another. The person that makes the decision to help another is particularly *vulnerable* to the person requiring help. A person giving help does not anticipate danger from the person receiving aid. One who criminally abuses this relationship should be subject to an exceptional sentence.

██ Although the victim's status as a "Good Samaritan" is not enumerated as an aggravating factor in RCW 9.94A-.390(2), those factors are illustrative, not exclusive. RCW 9.94A.390. A factor that is not enumerated in RCW 9.94A-

.390(2) may be used as an aggravating factor if it is substantial and compelling and if it is not taken into account in computing the standard range. *State v. Nordby*, 106 Wn.2d 514, 517-18, 723 P.2d 1117 (1986).

It has long been the policy of our law to protect the "Good Samaritan".[3] Washington has adopted a "Good Samaritan" statute which provides immunity against civil liability for those who render emergency care at the scene of an emergency, unless they commit gross negligence or willful or wanton misconduct. RCW 4.24.300. Similarly, one who comes to the aid of a perceived assault victim is protected from criminal prosecution, even if the victim is discovered to have been the aggressor. *State v. Penn*, 89 Wn.2d 63, 66, 568 P.2d 797 (1977). The rationale behind this rule is to prevent an innocent person from being injured without the assistance of bystanders as "bystanders would be hesitant to defend until they had determined who was at fault." *Penn*, 89 Wn.2d at 66.

■ Although murder itself offends fundamental notions of morality, to murder a person who comes to one's aid discourages others from offering aid to persons in need of help. The ramifications to a civilized society are indeed disturbing. Here Hillman acknowledged that the victim "said he'd give me a ride into town. He was a nice guy. He was there to help us . . . I stood up and shot him." This homicide does differ from the "typical" first degree murder. We hold that the fact that Hillman murdered a "Good Samaritan" who had come to his aid is a substantial and compelling reason in support of an exceptional sentence.

We reject Hillman's argument that if we validate this as an aggravating factor soon the only time the standard range will be utilized is if the victim is an unsavory character or that to expand the recognized aggravating factors will lead to the exceptions swallowing the rule. "A Statistical Sum-

---

[3]The phrase "Good Samaritan" originates from a passage in the Bible in which Jesus was asked what a person should do to inherit eternal life. Jesus responded with a parable about a Samaritan who helps an injured traveler. *Luke* 10:30-37 (King James).

mary of Adult Felony Sentencing Fiscal Year 1991", issued by the Sentencing Guidelines Commission, summarizes sentences imposed on 16,554 adult felony offenders who were sentenced between July 1, 1990, and June 30, 1991. Of the 37 total sentences for first degree murder during the period, 10 exceptional sentences were imposed; 9 of the exceptional sentences were above the standard range and 1 was below. Of the 208 total sentences imposed in the category of serious violent offenses, 168 sentences were within the standard range, 28 sentences were above the standard range and 7 sentences were below the standard range.[4]

We see no indication from these statistics that the exceptions are swallowing the rule. That the "Good Samaritan" factor has not been recognized previously demonstrates the unusual nature of this type of crime — one we believe the Legislature could not have considered when setting the standard range. We therefore affirm the "Good Samaritan" exception as a valid aggravating factor.

2. Future Dangerousness.

In *State v. Barnes*, 117 Wn.2d 701, 711, 818 P.2d 1088 (1991), the Supreme Court held that a sentencing court may not rely on the future dangerousness of the defendant as a reason for imposing an exceptional sentence in a nonsexual offense case. Based on *Barnes*, the State concedes that the trial court's finding of future dangerousness as an aggravating factor is insufficient, as a matter of law, to justify the imposition of an exceptional sentence and that we must remand for resentencing in view of the great weight placed on that factor by the trial court. Because we cannot conclude from this record that the court would impose an exceptional sentence based on the "Good Samaritan" factor alone, we accept the State's concession.[5]

---

[4]Three sentences were within the standard range but had conditions imposed as part of the sentence.

[5]*Cf. State v. Knighten*, 109 Wn.2d 896, 902, 748 P.2d 1118 (1988) (stating that an appellate court is not bound by party's erroneous concession).

■ In so ruling, we point out that we would have an entirely different issue if we were convinced that the trial court had considered only a valid factor, in this case the "Good Samaritan" factor, in determining whether to impose an exceptional sentence, and if we were further convinced that the court had only considered future dangerousness in the exercise of its discretion in determining the *length* of the exceptional sentence. We see nothing in *Barnes* which causes us to conclude that protection of the public from a defendant who admits he is liable to murder again is not a tenable basis upon which to base the length of an exceptional sentence. The distinction between this and treating "future dangerousness" as an aggravating factor to justify a sentence outside the standard range is subtle but nevertheless crucial. The record reflects that the violent behavior of Hillman is escalating; his previous second degree murder was committed in "hot blood" as was his previous second degree assault — both occurred following quarrels. Here there was no quarrel, but instead, a cold-blooded stalking and ambush of the victim. The record fully supports the trial court's determination that to release this man at any time would be tantamount to sentencing another person to death. That there is evidence that Hillman probably cannot be treated is also relevant to the decision of for how long society needs to be protected.

It is clear from this record, however, that the trial court, based on case law now rejected by the Supreme Court, focused on future dangerousness as the primary aggravating factor. For that reason, we reverse and remand for resentencing.[6]

GROSSE, C.J., and AGID, J.; concur.

Review denied at 120 Wn.2d 1011 (1992).

---

[6]Because we are reversing and remanding for resentencing, we decline to address Hillman's contention that a 70-year sentence for first degree murder is clearly excessive. Such issue may be addressed, if relevant, in the event of another appeal following resentencing.