Richard MAYNARD, Plaintiff,

v.

FERNO–WASHINGTON, INC., Defendant.

Marta MAYNARD, Plaintiff,

v.

GRANT COUNTY HOSPITAL DISTRICT NO. 2 and Ferno–Washington, Inc., Defendants.

Nos. CS–97–291–JLQ, CS–97–292–JLQ.

United States District Court, E.D. Washington.

Oct. 2, 1998.

Richard C. Eymann, John D. Allison, Feltman Gebhardt Eymann & Jones, Spokane, WA, Mark E. Stansfield, Stansfield Law Office, Quincy, WA, for Richard Maynard, Marta Maynard.

Andrew C. Gauen, Merrick Hofstedt Lindsey, Seattle, WA, for Ferno–Washington Inc.

Lisa C. Neal, Troy D. Greenfield, Bullivant Houser Bailey Pendergrass & Hoffman, Seattle, WA, for Grant County Hosp. Dist. No. 2.

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT FERNO–WASHINGTON'S MOTION FOR SUMMARY JUDGMENT RE: ADEQUATE WARNINGS; AND DENYING DEFENDANT FERNO–WASHINGTON'S MOTION TO STRIKE AFFIDAVITS

QUACKENBUSH, Senior District Judge.·

**BEFORE THE COURT** are Defendant Ferno–Washington's Motion for Summary Judgment Re: Adequate Warnings (Ct. Rec. 94); Plaintiffs' Motion for Partial Summary Judgment Re: Negligence as a Matter of Law Relating to Defendant Grant County Hospital District No. 2 (Ct. Rec. 99); and Defendant Ferno–Washington's Motion to Strike Affidavits (Ct. Rec. 137), heard telephonically on September 30, 1998. John D. Allison appeared for Plaintiffs. Troy D. Greenfield appeared for Defendant Grant County Hospital District. Andrew Gauen appeared for Defendant Ferno–Washington. Having reviewed the record, heard from counsel, and being fully advised in this matter, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Ct. Rec. 99) is **DENIED;** Defendant Ferno–Washington's Motion for Summary Judgment Re: Adequate Warnings (Ct. Rec.) is **DENIED;** and Defendant Ferno–Washington's Motion to Strike Affidavits (Ct. Rec. 137) is **DENIED** for the following reasons.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an accident on July 24, 1994, whereby Plaintiff Marta Maynard was injured when thrown from an ambulance during the unloading of a patient, while acting as a volunteer Emergency Medical Technician (EMT) at Quincy Valley Hospital. On July 16, 1998, the court entered a Memorandum Opinion and Order on cross-motions for partial summary judgment finding that Marta Maynard's claims against the Hospital were not barred by the Washington Workers' Compensation Statute, in that she was working as an uncovered volunteer at the time of the accident. On August 27, 1998, the court entered an Order granting in part as uncontested Defendant Ferno–Washington's Motion for Partial Summary Judgment as to claims of breach of warranty, construction defects, and Washington Consumer Protection Act violations, and reserving as to the adequate warnings issue.

### 1. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs seek partial summary judgment as a matter of law that EMT Barry Keller, who pulled the cot out from the ambulance, was negligent and that the Defendant Hospital is liable for damages for the negligent

acts of its agent, EMT Barry Keller. Plaintiffs further seek an Order dismissing the affirmative defenses raised by the Defendants claiming the alleged contributory negligence of the Plaintiffs. Plaintiffs contend that neither Mr. Keller nor the Hospital are immune under Washington's "Good Samaritan" statute. The court agrees.

RCW 4.24.300 provides:

Any person, including but not limited to a volunteer provider of emergency or medical services, who without compensation or the expectation of compensation renders emergency care at the scene of an emergency or **who participates in transporting, not for compensation, therefrom an injured person or persons for emergency medical treatment shall not be liable for civil damages resulting from any act or omission** in the rendering of such emergency care **or in transporting such persons, other than acts or omissions constituting gross negligence or willful or wanton misconduct.**

RCW 4.24.300 (Emphasis added).

RCW 4.24.310(3) defines "scene of an emergency" as "the scene of an accident or other sudden or unexpected event or combination of circumstances which calls for immediate action." RCW 4.24.310(2) which defines "emergency care," states:

Except with respect to the injured person or persons being transported for further medical treatment or care, **the immunity granted by RCW 4.24.300 does not apply to the negligent operation of any motor vehicle.**

RCW 4.24.310(2) (Emphasis added).

■ Plaintiffs contend that this is a "Good Samaritan" statute which only applies to claims of damages by the injured party being transported, and therefore does not apply to Mr. Keller, without any cited authority. The court finds that it was the clear intent of the legislature to protect volunteer emergency workers coming to the aid of an injured person from liability for simple negligence that caused further injury to the injured person.

■ Grant County Hospital argues that the plain language of the statute refers to **any act or omission in the transport of an injured person,** and therefore covers any claim of negligence over any act occurring during the transport of a patient. However, reading the statute in its entirety, including the definition of "emergency care," RCW 4.24.310(2) supports Plaintiffs' position.

Under RCW 4.24.310(2) it is clear that had Mr. Keller been negligently driving the ambulance, causing an accident that injured Ms. Maynard, he would not be immune from liability under RCW 4.24.300. In that scenario, he would only be immune if it was the patient who was injured in the car accident due to his negligence.

Washington courts refer to RCW 4.24.300 as the "Good Samaritan" statute. *See State v. Hillman,* 66 Wash.App. 770, 832 P.2d 1369 (1992); *Youngblood v. Schireman,* 53 Wash. App. 95, 765 P.2d 1312 (1988). The court in *Hillman* noted that "[i]t has long been the policy of our law to protect a "Good Samaritan." Washington has adopted a "Good Samaritan" statute which provides immunity against civil liability for those who render emergency care at the scene of an emergency, unless they commit gross negligence or willful or wanton misconduct," citing RCW 4.24.300.

The phrase "Good Samaritan" originates from a passage in the Bible in which Jesus was asked what a person should do to inherit eternal life. Jesus responded with a parable about a Samaritan who helps an injured traveler. Luke 10:30–37 (King James).

*Id.* 66 Wash.App. at 774 n. 3, 832 P.2d 1369.

It is clear under RCW 4.24.310(2) the immunity does not apply to an act of negligence in driving any motor vehicle, for a claim by anyone other than the patient. The court is satisfied that this indicates legislative intent to protect the Good Samaritan from ordinary negligence claims by the person being helped, but not from ordinary negligence claims by third persons. Therefore, the court finds Mr. Keller is not immune for alleged ordinary negligence that proximately caused Ms. Maynard's injury.

■ Washington cases indicate that even if Mr. Keller were immune from liability under RCW 4.24.300, that immunity would not automatically protect his employer from liability. *See Hansen v. Horn Rapids O.R.V. Park of City of Richland*, 85 Wash.App. 424, 932 P.2d 724 (1997). In *Hansen*, a participant in a motocross race held in a city park brought an action against the promoter of the race, the automobile dealership which sponsored the race and the city, based on the alleged negligence of EMTs who had treated him, after he was injured during the race. The court noted that the EMTs were immune from liability for the injuries of the injured participant under RCW 4.24.300. However, the court analyzed the possible liability of the City under the Restatement (Second) of Torts §§ 314A and 314B identifying five relationships that give rise to an affirmative duty to act including that of employers to employees acting within the scope of their duties.

The court finds that Grant County Hospital District Number 2 is not immune from liability for the alleged negligence of EMT Barry Keller.

■ Therefore, the question then becomes whether Plaintiffs are entitled to a judgment as a matter of law that Mr. Keller's negligence caused Ms. Maynard's damages and that the Hospital is vicariously liable for the negligence of Keller under a respondeat superior theory. The court does not so find.

The parties agree that this question of liability of the Hospital under a theory of respondeat superior for the alleged negligence of Mr. Keller is one of control. In Washington, the "vicarious liability of a principal" for the negligent acts of any agent or servant is dependent upon whether the principal controls or has the right to control "the details of the physical movements" of the agent while such person is conducting the authorized transaction. *McLean v. St. Regis Paper Co.*, 6 Wash.App. 727, 730, 496 P.2d 571, *rev. denied*, 81 Wash.2d 1003 (1972).

The Hospital contends that the court has previously ruled that Grant County did not control the volunteer EMTs in their work. The court disagrees. Rather, the court found that the Hospital did not control **when** or how 'often the EMTs worked in concluding that Ms. Maynard was not a covered employee. The issue at that time was not the control over training and procedures used in transporting a patient by the EMTs.

■ Negligence consists of (1) the existence of a duty owed to the complaining party; (2) a breach of that duty; (3) a resulting injury; and (4) a proximate cause between the claimed breach and the resulting injury. *Hansen v. Washington Natural Gas Co.*, 95 Wash.2d 773, 776, 632 P.2d 504 (1981). The issues of negligence and proximate cause are generally not susceptible to summary judgment. *Id.; see also, Ferrin v. Donnellefeld*, 74 Wash.2d 283, 444 P.2d 701 (1968). Only when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law. *Hartley v. State*, 103 Wash.2d 768, 775, 698 P.2d 77 (1985).

The court is satisfied that whether 'the Hospital had sufficient control over the volunteer EMTs to impute vicarious liability for the negligent acts of Barry Keller is an issue of fact for the jury. Plaintiffs have not established as a matter of law that the Hospital is liable for the alleged negligent acts of Barry Keller. First, it is a jury question as to whether Barry Keller's negligence was the proximate cause of Marta Maynard's injuries, and then only if so, whether the Hospital had sufficient control over the volunteer EMTs to impute vicarious liability to the Hospital for the alleged negligent acts of Barry Keller.

Thus, the court finds that it cannot hold as a matter of law that reasonable jurors could reach only the conclusion that the negligence of Barry Keller was the proximate cause of Marta Maynard's injury and that Grant County is imputed with liability for that negligence.

In addition to seeking a judgment as a matter of law that Barry Keller was negligent and that the Hospital is vicariously liable for that negligence, Plaintiffs also seek a judgment as a matter of law that the affirmative defenses of contributory negligence by the Plaintiffs must be dismissed. Again, whether either or both Plaintiffs contributed

to the negligence leading to this accident is a disputed issue of fact for a jury to determine.

There is clearly an issue of fact over whether Marta Maynard witnessed a similar accident shortly before her own accident. EMT Nancy Smith filled out a report concerning an incident on June 27, 1994 stating:

> While unloading pt. (patient) from ambulance, noted cot did not lock, attempted to alert other EMT. Cot then dropped causing me to fall from back of ambulance to ground via cot landing on (L) elbow and hip. Witnesses: EMT D. Maynard, Don Crowell, R.N., EMT M. Maynard. Pt. (Patient) was not affected or injured by fall.

Marta Maynard disputes that she was a witness to this incident claiming she did not witness the accident and had been told only that Nancy Smith had fallen. There is also some evidence that Plaintiff Marta Maynard was contributorily negligent on the evening she was injured. The Affidavit of Tom Fries (subject of the motion to strike) states that Ms. Maynard acted inappropriately in attempting to hang onto the ambulance cot while it was being pulled out of the ambulance. Plaintiffs' expert Mike Smith agrees. Neither plaintiffs nor the Hospital dispute this in their replies. There is also some evidence that Dick Maynard, being the most experienced of the three EMTs that evening, was negligent in the manner in which he parked the ambulance and/or supervised the more inexperienced EMTs.

Finally, there is an issue of fact as to whether Marta Maynard failed to mitigate her damages. The Hospital contends that Ms. Maynard should be deemed at fault because she failed to seek psychiatric intervention or the prescription of anti-depressants. On November 7, 1994, Dr. Michael Anderson determined that Marta Maynard was suffering from symptoms of depression secondary to her head trauma. The Hospital's expert, Phyllis Nancy Sanchez, Ph.D., performed an evaluation and clinical interview with Marta Maynard on May 6, 1998. Dr. Sanchez believes that Ms. Maynard's responses revealed a significant level of probable clinical depression that would benefit from psychiatric intervention. However, Plaintiffs contend that no psychiatrist or medical doctor ever prescribed or suggested anti-depressant drugs or other "psychiatric intervention." The court is satisfied that the question of whether Marta Maynard unreasonably failed to mitigate her damages is a question of disputed fact for the jury. Therefore, it is clear that Plaintiffs are not entitled to a Judgment as a matter of law that they were not contributorily negligent.

The court is satisfied that Plaintiffs have failed to establish an absence of disputed facts to find as a matter of law that they are entitled to summary judgment either on the imputed negligence of Keller to the Hospital or on the affirmative contributory negligence defenses of the Defendants. Therefore, Plaintiffs' Motion for Partial Summary Judgment must be and is denied.

### 2. Defendant Ferno–Washington's Motion to Strike Fries Affidavit, Inter Alia

Defendant Ferno–Washington seeks to strike the affidavit of the Hospital's expert Thomas R. Fries relating to product warnings and the affidavit of Lisa Neal relating to prior accidents involving Ferno–Washington cots.

Defendant Ferno–Washington argues that the affidavit of Mr. Fries must be stricken because (1) it violates discovery obligations; (2) it does not raise a genuine issue of material fact; (3) it states conclusions and opinions as to ultimate facts; and (4) Mr. Fries is not an expert on the topic of warning labels on ambulance cots. Then, Ferno–Washington argues, in the alternative, that if the court does not strike the affidavit, the court should impose other sanctions against the Hospital for the failure to comply with discovery rules and orders.

The court agrees that the Hospital has violated the letter and spirit of Rule 26 with the Fries affidavit. Rule 26(a)(2)(B) is very specific and provides:

> Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case . . . be accompanied by a

written report prepared and signed by the witness. The report shall contain a **complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions....**

The affidavit of Thomas Fries submitted in connection with these summary judgment motions sets forth SAE and ANSI standards for warnings with specificity concerning color and wording. The Fries written report dated March 3, 1998, to the contrary, lacks any specificity. It does not indicate that Mr. Fries would testify or had any opinion regarding the adequacy of the color of warnings on the cot or the specific wording of the warnings under SAE or ANSI standards.

Additionally, at his deposition, Mr. Fries testified that he was not prepared to testify about any specific violations of ANSI or SAE standards at that time, and that the standards did not apply specifically to ambulance cots. However, he did testify generally that he felt the warnings on the subject cot were not in conformance with the ANSI or SAE standards which he testified apply generally to all warning labels. Mr. Fries had not read Plaintiffs' depositions nor was he prepared to talk about any standards for warnings with specificity:

Q. What decal standards are you aware of that existed in 1989 when this product was manufactured?

A. They were probably SAE standards.

Q. Well, can you give me any specific citations to any standards?

A. No, I cannot give you the SAE number by memory. There were ANSI standards, I believe the 535 series which talk about different warnings decals for different products. Those, I believe, were 1,2,3,4, and 5 and I can't give have you the exact titles of these, but they all have the concept of color and attention.

Q. Have you done any research into any of those standards for the purposes of this case?

A. No sir.

Q. Well, give me as many specific concepts from either ANSI standards or SAE standards, is that the other one?—

A. Color.

Q. What about color, and what standard are you referring to?

A. Color is in the SAE standards. Color is in the ANSI standards.

Q. What does it specifically say about color in the 1989 versions of SAE or ANSI standard?

A. I think we've covered that, that I don't remember exact words.

Q. Well, what do you remember about color?

A. Red for danger, black and yellow for caution or warning. There's color—there's close proximity, and then there's various information to get across.

Q. So you're not prepared today to testify about specific violations of ANSI or SAE standards as they existed in 1989 when this product was manufactured?

A. That's correct.

Q. And you had never done that analysis prior to writing your report of March 3, 1988, as it relates to this case and this product?

A. I did not review the individual standards, but I had the opinion that the decals that existed were not adequate.

Q. In what specific way?

A. We've been over that.

Q. Well, no, you've never answered the question. You said they're not adequate. How are they not adequate. You said color, but what way?

A. They don't meet the guidelines for standards.

Q. What guidelines for standards, the SAE standards and the ANSI standards that you don't remember?

A. I do remember their basic requirements.

Q. What are their basic requirements?

A. They also do not apply to ambulance cots.

Q. Why don't they apply to ambulance cots?

A. Because they don't meet the concept of a motor vehicle or an automotive design.

Q. So you're referring to standards relating to motor vehicle and automobile devices?

A. That's what SAE is, automotive.

Q. So we can take SAE and put it aside because that any industry standard that wouldn't be applicable to an ambulance cot?

A. Absolutely not in concept. The guideline, what you may use as a guideline because there is no specific industry standard for many speciality items, but the concepts and the thoughts and the impressions that need to get across in warnings and decals exist regardless of whether there is a standard for a specific product. Many of the warnings that exist on products don't have a specific standard.

Q. Well, tell me every way you can think of that the decals on that cot, on the 29–M cot were inadequate, and point to me to an industry standard from any source, whether its SAE, ANSI.

A. I think I've already pointed to you the two sources which could be used as a guideline. I think any other standard that existed for warnings or any other guidelines for warnings or instructional decals would be violated because they're horrible

. . .

.        .        .        .        .

That does not—there is no attention getter, and common ways to do that are color. There is no reference to the need to review the owner's manual, where they can get it when its lost. There's no pointing out of an extreme hazard that exits with that, and that's the unloading of it. It's clear from the deposition of Ms. Wisecup that even listening for the click isn't thorough enough. Isn't adequate to make sure that it's locked into place. There's nowhere in the information that it gets the importance of keeping those wheels up so that they lock into place before and Im talking about the carriage wheels before its taken off of the deck of the ambulance. Those are specific causal to the accident that happened here.

■ The court is satisfied Grant County Hospital District Number 2 has violated discovery rules and, therefore, Ferno–Washington's Motion for Costs is well taken. If Ferno–Washington wants to retake Mr. Fries deposition concerning just what standards he feels were violated here, the Hospital shall be responsible for the costs involved therein, including the cost of the court reporter and attorney fees associated with the deposition. Counsel may inquire both as to the adequacy of the manual and the labels.

Ferno–Washington's objections to the Fries affidavit, other than the discovery violation, go to the weight rather than the admissibility of the Fries affidavit. Ferno–Washington argues that the affidavit should be stricken because it contains conclusions and opinions as to ultimate issues, citing cases for the proposition that an affidavit stating legal conclusions is not admissible.

■ Expert evidence is admissible under Fed.R.Evid. 702 if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." The court must determine whether (1) the subject at issue is beyond the common knowledge of the average layman, (2) the witness has sufficient expertise, and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion. *J.R. Maffei v. Northern Insurance Company of New York*, 12 F.3d 892 (9th Cir.1993). "An expert may offer an opinion or inference as to an ultimate issue to be decided by the trier of fact, according to Rule 704(a)." *Id.*

Ferno–Washington cites a number of Washington cases such as *Hiskey v. City of Seattle*, 44 Wash.App. 110, 720 P.2d 867, *rev. denied*, 107 Wash.2d 1001 (1986) for the proposition that

while expert testimony is admissible even if it embraces an ultimate issue to be decided by the trier of fact if it will assist the trier of fact to understand the evidence or determine a fact in issue, ER 702 and 704, experts are not to state opinions of law or mixed fact and law, such as whether X was negligent... An affidavit is to be

disregarded to the extent that it contains legal conclusions.

*Id.* 44 Wash.App. at 111, 720 P.2d 867.

■ It is not necessary to consider Mr. Fries' conclusion that the warnings on the cot were insufficient and did not comply with the standard of care exercised by a reasonably prudent manufacturer. That is a conclusion of law. However, the fact that the affidavit contains a legal conclusion alone is not a valid reason to strike the entire affidavit. For example, Mr Fries' opinion that the warnings were insufficient to attract the attention of attendants is no more a conclusion than the opinion of expert Dr. Gill, submitted by Ferno–Washington, that the warning labels could have been significantly better, but that even if they were, that would not have prevented the accident.

In addition, the Fries affidavit states facts raising a genuine factual issue as to whether the warnings on the cot were adequate. For example, Mr Fries sets forth the requirements of warnings under SAE and ANSI standards, and states facts such as "neither the labels nor the operators manual state where a second EMT should be positioned while the cot is unloaded from an ambulance."

■ The court finds that Ferno–Washington has not established that Mr. Fries is not qualified as an expert. Mr. Fries' affidavit clearly states his experience in evaluating safety warnings, decals, manuals, and instructions. Additionally, he wrote a text book with a chapter on product labels. Whether Mr. Fries qualifies as an expert is a determination to be made by the court based on his credentials.

Ferno–Washington also argues with facts stated by Mr. Fries. For example, Ferno–Washington argues that the decals on the cot were yellow and black and stationary as suggested they should be by Mr. Fries. It is further argued that a decal did warn that EMTs should consult the training manual, despite Mr. Fries' statement to the contrary. Mr. Fries does not state that no warning referred the EMTs to the training manual. Rather, he states that "if a warning was sufficient to catch the attention of persons using the cot, in accordance with ANSI and SAE standards, the users would not only read the label, but then would be referred to the operator's manual."

■ The court is also satisfied that Ferno–Washington's evidence that the labels were yellow and black and permanently affixed is evidence that challenges the weight of Mr. Fries' testimony, rather than its admissibility. A reasonable juror could conclude, seeing the yellow and black decals that were on the cot, that the warnings were adequate and did not violate the standards Mr. Fries alleges were violated, but a reasonable juror could also conclude that, even though yellow and black and stationary, the warnings still were not adequate to warn of the dangers because the warnings did not, for example, state where the attendants should be while unloading a cot and/or did not meet some SAE or ANSI standard and/or were the wrong color, insufficient to alert EMT attendants to the dangers.

Therefore, Ferno–Washington has not established that the Fries affidavit should be stricken.

■ It is clear under Washington law that the question as to whether warnings are adequate to insure safe use of a product as well as the question of whether the dangers involved are so obvious or well known to eliminate the necessity for detailed warnings are questions for the trier of fact. *Haysom v. Coleman Lantern Co.,* 89 Wash.2d 474, 478, 573 P.2d 785 (1978). "While at least one court has taken the position that the existence of a duty to warn is a pure question of law…, this is a view which we do not adopt." *Id.* 89 Wash.2d at 480, 573 P.2d 785. Even if the question of duty is a question of law, no party has addressed the issue of duty in its briefs.

■ In developing the scope of tort liability for negligence, "[t]he question of duty encompasses the concept of foreseeability." *Maltman v. Sauer,* 84 Wash.2d 975, 980, 530 P.2d 254 (1975). "Generally, the duty to use ordinary care is bounded by the foreseeable range of danger." *Wells v. Vancouver,* 77 Wash.2d 800, 803, 467 P.2d 292 (1970). "Negligence consists in the doing of

an act which a reasonable man would not have done, or in the failure to do an act which a reasonable man would have done under similar circumstances." *System Tank Lines v. Dixon,* 47 Wash.2d 147, 151, 286 P.2d 704 (1955). Also, obviously the causation issue necessarily involves the possible contributory negligence of others.

Ferno–Washington has not established that there is a complete absence of disputed issues of material fact as to the adequacy of the warnings, viewing all evidence and inferences in the light most favorable to the non-moving party, as is required for summary judgment under Fed.R.Civ.P. 56.

The court is also satisfied that the affidavit of Lisa Neal with accident reports of previous accidents with Ferno–Washington ambulance cots should not be stricken. Not because, as the Hospital argues, the motion to strike was untimely, but because these reports of prior accidents clearly go to the issue of foreseeability.

Basic summary judgment law is the same under both state and federal law. A summary judgment motion may be granted if the pleadings, affidavits, and depositions before the trial court establish that there is no genuine issue of material fact and that, as a matter of law, the moving party is entitled to judgment. *Hartley v. State,* 103 Wash.2d 768, 774, 698 P.2d 77 (1985). A material fact is of such a nature that it affects the outcome of the litigation. *Barrie v. Hosts of America, Inc.,* 94 Wash.2d 640, 618 P.2d 96 (1980). The court must consider the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, and a motion for summary judgment should be granted only if reasonable persons could reach but one conclusion from all the evidence. *Wilson v. Steinbach,* 98 Wash.2d 434, 437, 656 P.2d 1030 (1982).

## CONCLUSION

Both as to Plaintiffs' Motion for Partial Summary Judgment and as to Ferno–Washington's Motion for Partial Summary Judgment re: Adequate Warnings, neither side has established that reasonable minds could reach but one conclusion. Neither Plaintiffs

nor Defendant Ferno–Washington have established an absence of disputed issues of material fact as to the issues they want determined as a matter of law or that reasonable persons could reach but one conclusion from all the evidence. Accordingly, Plaintiffs' Motion for Partial Summary Judgment and Defendant Ferno–Washington's Motion for Summary Judgment Re: Adequate Warnings, as well as Ferno–Washington's Motion to Strike Affidavits must be and are **DENIED.**

**IT IS SO ORDERED.**